**SURRELL et al. v. PIERCE, BUTLER & PIERCE MFG. CORPORATION.**

(District Court, S. D. New York. February 5, 1924.)

**1. Patents ⚍328.**

14,002, Surrell patent, claims, 1, 10, 21, 22, and 23, for back draft boiler, *held* invalid.

**2. Patents ⚍328.**

14,003, Surrell patent, for sectional boiler, *held* not infringed.

**3. Patents ⚍27(1).**

A new use of an old disclosure is not patentable.

**4. Patents ⚍328.**

1,089,747, Butler patent, for sectional boiler, *held* not infringed.

In Equity. Patent infringement suit by John Ralph Surrell and another against the Pierce, Butler & Pierce Manufacturing Corporation, wherein defendant pleaded a counterclaim. Bill and counterclaim dismissed.

Decree affirmed 11 F.(2d) 441.

The patent involved in the counterclaim is No. 1,089,747, issued to William M. Butler on March 10, 1914.

The following will serve to illustrate the various patents considered in the opinion:

SURRELL FURNACE AND BOILER ILLUSTRATED

Fig. 1.

Fig. 2.

SHOEMAKER FURNACE ILLUSTRATED

# FIG. 1

SHOEMAKER FURNACE ILLUSTRATED

BERNHARD BOILER ILLUSTRATED

BERNHARD BOILER ILLUSTRATED

BUTLER SECTIONAL BOILER ILLUSTRATED

Clarence D. Kerr, of New York City, for plaintiffs.

Eugene A. Thompson, of Syracuse, N. Y. for defendant.

LEARNED HAND, District Judge. [1] I take up first the validity of Surrell's patent, 14,002. The first reference is Shoemaker, 938,022, a part of the prior art before Surrell's earliest date. This contains a boiler with pipes through it acting as a back flue, a combustion chamber, a fire box, two water drums, and water legs connecting the drums to the boiler proper. The combustion chamber is formed between the water legs, the boiler, the two drums, and the grate. The fire box is formed between the side of the furnace, the water legs, a water drum, and the grate. There are two feed doors, two clinker doors, and two ash pit doors, all at the end of the furnace.

I can see no distinction between this patent and the disclosure of Surrell's 14,002, except the following: What I have called the water drums, one on each side, are called in the patent "headers," and there is a second one at the upper end of the water legs. The water legs do not lead directly into the boiler, but the headers forming an upper water drum are tapped by a single connection (20 of Fig. 1). It was on this distinction that Surrell got his patent as against Shoemaker. The feed doors are not ranged along the side of the fire box, as in Surrell's boiler, and the coal must be trimmed with a poker from the front.

Taking up claim 1 of Surrell, the only distinctions either in structure or in function are the direct connection of the water legs to the boiler already mentioned, and the phrase "said furnace being closed at the bottom, whereby a down draft through said fuel chamber is created." The feed doors of Shoemaker are equally well suitable "for controlling the admission of air at the top of said fuel combustion chamber" as are Surrell's, though they do not allow separate parts of the coal bed to be damped as suggested (page 1, lines 89–95; page 3, lines 4–13). I cannot agree with the Examiner that it is a patentable distinction to connect the water legs directly with the boiler; it was a mere detail of design. Suppose, for example, that instead of one connection, as shown in Fig. 1, Shoemaker had put in a pipe at the end of each of the upper headers; that would have been a direct connection for each, carrying each to the boiler, and yet it would be no more than to multiply features already shown, which is scarcely an invention.

So it can be only because Surrell's furnace is to be closed at the bottom that claim 1 can be valid over Shoemaker. Surrell at several places in his disclosure speaks of his furnace as "down-draft"; but there was nothing new in that. It was, of course, known from ancient times that, in order to get a draft in one direction, you must close those openings which will suck in air from other directions; that is, if you would have a down draft, you must close the openings at the bottom. Every one who tends a furnace knows that. It is absurd to lay claim to an invention based upon any such feature. Surrell in his specifications assumed as much, because he said nothing specific about the closure of his ash pit door, E'. It is mentioned only twice. First on page 2, lines 45–48, he speaks of it as "normally excluding air therefrom"; i. e., from the ash pit. Again, on page 4, lines 99–103, he says that the door "should be closed to prevent a draft counter to the down draft." By a late addition to some of his claims, he included an "air-tight" door; but obviously this is a relative phrase. Such doors are not literally air-tight, and cannot be made so. There is no conceivable need of more than a substantial shutting off of counter drafts; the question is necessarily one of degree.

That being so, Shoemaker's furnace becomes Surrell's as soon as the ash pit doors, 24, are closed. It makes not the least difference that Shoemaker did not intend his furnace to be so used, but to leave open the ash pit doors as well as the feed doors (page 2, lines 42–47). Surrell cannot support his patent upon one method of using Shoemaker. Even supposing that Shoemaker's ash pit doors were not air-tight, in the sense, whatever it was, of Surrell's claims, it would make no difference. If you were to close them and open the feed doors, you would have every element of Surrell, except that the down draft might not be perfect. It seems to me beyond any just argument to urge that it would be an invention to perfect the draft so created. The Examiner was certainly right in citing Shoemaker as an anticipation, though I cannot go along with him in accepting the directness of the connection as the basis of an invention. Therefore I find claim 1 anticipated.

The other claims in suit fall with this. Claim 10 is the same, except for the shape of the fire box, which is also shown in Shoemaker's patent. Claim 21 reads pari passu

on Shoemaker, except as to the down draft and the air-tight ash pit doors. I need add nothing to what I have said in respect of these. Claim 22 is the same, except for the position of the grate, which is, however, reproduced in Shoemaker. Claim 23 is the same, except for the added element of the small door L, giving into the combustion chamber. Apparently Shoemaker does not have this, though there are in Figs. 2 and 3 such doors indicated, which could be so used. It is in any case a small matter, not sufficient to make an invention.

Shoemaker seems to me to have thought out and perfected every element which Surrell disclosed in his general patent, at least so far as the defendant made use of Surrell's combination. The difference of design is great enough, it is true; but these claims speak generally. Anything which catches the defendant falls foul of Shoemaker, and the claims in suit are in my judgment void.

Greene's patent, 766,440, is in design nearer to Surrell than Shoemaker; but the fire box is constricted at the base, and the difference may perhaps be patentable, more so than the distinction on which in part, anyway, Surrell was allowed over it; i. e., that the water drum was above the grate. The draft connections are not shown in Greene, but the first examiner of Surrell's application ruled, I think correctly, that they were not necessary. Common knowledge certainly supplies them. The furnace is represented as blocked on four sides, except for a door to the ash pit. The feed magazine is not disclosed. Clearly it must have openings somewhere. If the ash pit door be closed and the feed doors left open, the furnace will operate by down draft; if vice versa, then by up draft. While I think the patent not a sufficient anticipation, because of the form of the fire box, already mentioned, and possibly for the position of the water drum, nevertheless the point on which the plaintiff chiefly relies—i. e., the down draft—does not seem to me to be well taken. Shoemaker's disclosure was a little closer, but in substance this feaure was the same in each.

[2, 3] Surrell's second patent in suit, 14,003, being for his sectional boiler, is met neither by Greene, nor by Shoemaker, although it may be observed that Shoemaker's water legs and drums are in sections. The nearest anticipation to this patent is to be found in the patent to Bernhard, 794,773. Bernhard's boiler is made up of identical intermediate sections, with end sections of different design. It is like the defendant's present boiler, and unlike Surrell's in having only a one-

side fire box, and a single set of water legs. Before taking up the details I may consider the same objection raised by the plaintiff to this disclosure as to Shoemaker and Greene; i. e., that Bernhard's is not a down-draft furnace. The answer is the same. The draft in these furnaces can only come in through one or both of the doors indicated by the numbers 32, 33. If the bottom door be closed and the top opened, the furnace is a down-draft, at least in the only sense that the defendant's is a down-draft boiler; if the order is reversed, it is an up-draft. The difference, as in the case of the other references, is merely in the use of the furnace; the design is precisely the same as Surrell's in this regard, unless it be for the specification of a tight ash pit door, which I have already considered. There can be no patent for a new use of an old disclosure.

Coming, then, to the details of construction, one finds a boiler in sections, in this regard like Surrell's or the defendant's. The front receives the coal, which is held in a triangular space between the front, the grate, and a series of water legs. These legs do not come down to the level of the water drum and are spaced more widely than in Surrell; but they are nevertheless intended to form the top and rear wall of the fire box (page 2, lines 79–83), and must necessarily make a grate for the coal. The combustion chamber, which lies above and to the rear of the fire box, is between these legs, the bottom of the boiler (which Bernhard calls the "crown sheet member"), and its rear. The chamber is not entirely open, because there are two rows of vertical tubes, or columns, 25, interposed in it, around which the gases must pass. These are part of the water circulation system of the boiler proper. The gases pass out of the combustion chamber at one side of the furnace and, reversing their direction, through another similar chamber to the other side, where they again reverse direction, and finally reach the chimney through a second flue.

There is but one substantial difference between this patent and Surrell's, aside from the fact that it is, like the defendant's, a one-side boiler. In Surrell's the gases leave the combustion chamber by means of the narrow flues between the sections, made by fluting or corrugating the sides of the sections from the top of the chamber to the lower of two rows of flues within the boiler, the equivalent of the usual heating pipes. In Bernhard's boiler there are no exits for the gas from the combustion chamber, except around one end of the boiler into the cham-

ber, *27*, above. Whether this added detail of Surrell's is of itself a patentable variation, I believe I need not determine here, though it seems to me open to some question. I shall in any case assume for argument's sake that it is. Certainly, if in the form of "corrugations," it should be entitled to a narrow protection.

I need not dwell upon such elements as the damper door, which I considered before; there can be no invention in such a detail, any more than in having two legs, instead of one to each section, Passing these, I can come directly to the matter of infringement. In what terms is that feature described which distinguishes Surrell from Bernhard, I mean the connection between sections of the combustion chamber directly with the first return flue? In claim 1 it is described as consisting of flues made by "corrugations" in the sides of the sections; in claim 2, as "means upon the opposite face of each said section whereby flues, extending from the air and gas combustion chamber to the heat areas of said boiler,  *  *  *  are formed." The distinction so maintained between the claims makes it necessary to hold rather rigidly in claim 1 to the word "corrugations"; it being clear that claim 2 is intended to speak more generally. Certainly there is no warrant whatever for speaking of the defendant's sections as having "corrugations" on the face of the sections. If the plaintiff can hold the defendant at all, it must be under claim 2.

Coming, then, to the defendant's boiler, and omitting any consideration of the fire box, which is, so far as I can see, functionally identical in all three structures, Bernhard's, Surrell's, and the defendant's, one finds the combustion chamber with a structural limit on one side—i. e., the grill of water legs—but on the other structurally ended only after the whole chamber has been twisted on itself and abuts upon the front wall of the boiler. This space is, however, divided into three parts by two rows of columns or tubes, one leg of each row being in each section, precisely as Bernhard's combustion chamber was divided. The upper of these legs is not columnar, but a half square in section.

The gas, entering the chamber through the grill, passes through all three divisions of the chamber, and is sucked out at one end of the boiler into a return flue, whence it reaches the chimney. I hardly think I should have even thought of distinguishing between the three divisions of the combustion chamber at all, had it not been that the defendant has called the last of them a "collecting flue," thus giving color to the supposition that it was in some way different in function from the others. But this cannot be, so far as I can see. It is true that the gases are drawn out only from the end of this upper or last division of the chamber, and that all of it must therefore pass up through the first and second, yet this would equally be true if there were no rows of columns or tubes within it.

If one looks at Surrell's boiler, and sees what he had in mind in describing the "flues" in his claim, it must be apparent that it was something altogether different from what the defendant has done. Flues are normally long, narrow passages through a wall, and that is how Surrell used the word. One may casuistically argue that, if you divide an open space by columns, the spaces between them are flues; but the impropriety of the term is obvious, as soon as one is candid. The tail has been made to wag the dog. Just as no one would properly think of regarding the two lower divisions of the combustion chamber as connected by flues, because there are columns within it, so one would not divide the third part from the rest, because, the twist being there most rapid, the columns are broadened at their circumferential end.

It is therefore entirely clear what Butler did. He took Bernhard's boiler and twisted the combustion chamber upon itself through an angle of substantially 180°, making it necessarily deeper and longer in section. He kept the two rows of water tubes, *25*, changing the shape of the second row for the reason just given. Had he stopped here, there could be no conceivable question of the provenience of his boiler; but he did more, and it was only this step which has exposed him to any color of claim for infringement at all. Had he sucked the gas out of the end of all three of the divisions made by the two rows of tubes, he would have done no more than Bernhard; but he closed up the ends of the first two divisions and sucked out the gases only through the third. In so doing, however, he did not change his combustion chamber into three chambers connected by "flues." nor did he make the result different by calling the third division a "collecting flue." His boiler still shows the inheritance of its progenitor, and has no likeness to Surrell. Nor is it relevant that, after so doing, it has become possible to omit altogether the upper passage between the "crown sheet member" and the "dome."

It is clear, then, that Surrell's claim

ought not to be interpreted as covering the defendant's boiler. The words have a different meaning, and are used colloquially, not esoterically. The defendant has no flues, and to speak of the spaces between the columns as such is to ignore their origin, and to make the claim invalid. I therefore find that neither claim of patent 14,003 is infringed.

Nor do I believe that Butler copied Surrell's boiler, even after getting the supposed hint that a single-sided boiler might easily be made. Butler had no need to look to Surrell, and, when he made his boiler, he kept far away from him. He was working upon Bernhard's disclosure, for Bernhard was an employee of the defendant. He had nothing to learn and nothing to borrow from Surrell, though, as is commonly the case with inventors, Surrell supposed that all roads must of necessity lead to Rome. There is no evidence to support his quite gratuitous assumption.

### The Counterclaim.

[4] Surrell's boiler was certainly disclosed before the date of filing of Butler's application, and before any date which can be stretched into an antecedent date of invention, the latter part of the year 1911. Surrell filed on November 25, 1911, and his Washington avenue boiler was in use still earlier. If the defendant can succeed at all, it must therefore be because it was an infringement to change Surrell's double boiler into a single one. There is no difference between the two forms, except that one side has been cast away and the space closed up. Indeed, it is possible that Surrell got the idea of a single-side boiler from Butler, in spite of his supposition that the derivation was quite the opposite. It makes no difference. There was nothing new in the idea of a single-feed boiler for either of them, because Bernhard had twice disclosed it in his patents, assuming that it was patentable at all. The idea being in existence, Surrell surely may make single his double boiler, whether it falls within Butler's claim 13 or not. If it does, the claim is invalid; if Butler's claim is to survive at all, it can be only because Surrell's single boiler does not infringe it. I need not decide where the truth lies between these alternatives. In neither event can the defendant succeed on this claim, and in the interest of the patent I may content myself with a finding of noninfringement.

Bill and counterclaim dismissed, without costs.